Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5344 | **DATE** | 7/11/2001 |
| **CASE TITLE** | MICHAEL SCIALABBA, ET AL vs. SIERRA BLANCA CONDOMINIUM NUMBER ONE ASSOCIATION, ET AL., | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due _____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry]    Defendants' motion for summary judgment [48-1] is granted as to Counts I, II and III, and is denied as to Counts IV, V, VI, VII, and VIII. Plaintiffs' motion for partial summary judgment on Counts V and VII [43-1] is granted. Plaintiffs' motion to strike defendants' Rule 56.1 statements that support their "advice of counsel" defense [74-1] is granted. Plaintiffs' motions to strike documents in defendants' Rule 56.1 statements [76-1], [75-1] are denied. Defendant's motion to strike Victor Wronski's affidavit [79-1] is granted. The parties shall present their joint pretrial order and agreed jury instructions on August 1, 2001 at 9:00 AM; plaintiffs'    draft shall be submitted to defendants by July 25, 2001. Trial is set on August 6, 2001 at 9:00 AM.  ENTER MEMORANDUM OPINION AND ORDER. *Suzanne B. Con...* |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | number of notices |
| | Notified counsel by telephone. | JUL 1 6 2001 |
| | Docketing to mail notices. | date docketed |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | 7/11/01 date mailed notice |
| sb | courtroom deputy's initials | pg mailing deputy initials |
| | | Date/time received in central Clerk's Office |

Document Number

82

FILED FOR DOCKETING
01 JUL 12 PM 7: 01

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL SCIALABBA, ET AL., | ) | |
| | ) | |
| Plaintiff, | ) | No. 00 C 5344 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| SIERRA BLANCA CONDOMINIUM NUMBER | ) | |
| ONE ASSOCIATION, ET AL., | ) | |
| | ) | |
| Defendant. | | |

DOCKETED

JUL 1 6 2001

## MEMORANDUM OPINION AND ORDER

Michael Scialabba, James Scialabba, Barbara Scialabba, and Hope Fair Housing Center

("Hope Housing") (collectively "plaintiffs") sue Sierra Blanca Condominium Number One

Association ("Sierra Blanca") and ABC Property Managers, Inc. ("ABC Property") (collectively

"defendants") for discriminatory restrictions on occupancy and use of condominium facilities

(Count I), 42 U.S.C. §§ 3604(f),3617, coercion, intimidation, threats and interference (Count II),

42 U.S.C. §3617, fostering and ratifying a hostile environment in violation of the Fair Housing

Act ("FHA") (Count III), 42 U.S.C. §§ 3604(f),3617, and failure to provide a reasonable

accommodation in violation of the FHA (Count IV), 42 U.S.C. § 3604(f). Plaintiffs sue Sierra

Blanca for breach of fiduciary duty and negligent breach of fiduciary duty for violation of

declaration and bylaws (Counts V & VII), breach of fiduciary duty and negligent breach of

fiduciary duty for violation of federal fair housing laws (Counts VI & VIII). Defendants move for

summary judgment. Plaintiffs move for summary judgment on their breach of fiduciary duty and

negligent breach of fiduciary duty claims (Counts V & VII).

## BACKGROUND

All facts are undisputed unless otherwise stated.[1]  James and Barbara Scialabba are the parents of Michael Scialabba.  The Scialabbas resided in a condominium at Sierra Blanca in Hanover Park from 1977 until November 1996.  Sierra Blanca is an Illinois non-profit corporation; it is a condominium association created pursuant to the Illinois Condominium Property Act ("Condo Act"), 765 ILCS 605/1 *et seq.*  The Scialabbas' condominium is subject to Sierra Blanca's declaration, bylaws, rules and regulations.  ABC Property is an Illinois property management corporation and Terry Schiro is the owner and president.  ABC Property has been Sierra Blanca's property manager since the 1980s.  Schiro primarily managed Sierra Blanca through 1996.  Sierra Blanca's property includes a swimming pool.  ABC Property supervised personnel at the pool.  Def. Ex. 4 at 94-95.

Robert and JoAnne Krueger resided with their daughter Jodi Krueger next door to the Scialabbas from 1989 to 1997.  Robert was a member of the board from 1993 to 1996, and president in 1996.

Michael Scialabba was in an automobile accident in March 1984; he suffered a brain injury.  Dr. Noel Rao was Michael's treating physician after his accident and during his rehabilitation from 1984 through 1996.  Michael suffers from low frustration tolerance. Defendants assert that Michael engaged in improper conduct over the years at Sierra Blanca and

---

[1] Plaintiffs' references to declaration and deposition testimony is cited "Pl. Ex. ( __ )." The Roman numerals correspond to the order in which the declarations and depositions are bound.  Defendants' motion to strike Victor Wronski's declaration is granted.  Defendants received plaintiffs' supplemental Rule 26(a)(1) disclosures after discovery closed. Wronski was not identified as an individual likely to have discoverable information before discovery closed.

so they hired an attorney, Jeffrey Goldberg, to address the problems in accordance with the declaration, rules and regulations in May 1996.[2] Def. Facts at ¶¶ 15-29,31-35,37,39-40,45-58,61-62, 64, 70-71. Michael's alleged misconduct includes profanity, verbal abuse, threats, public intoxication, menacing behavior, and physical violence against residents and agents of Sierra Blanca. *Id.*[3] Sierra Blanca claims it provided Goldberg with information regarding these incidents. Def. Ex. 5 at 76-77,128; Def. Ex. 4 at 170. Goldberg sent a letter dated June 1, 1996 to the Scialabbas concerning Michael's conduct and requested that they contact him to discuss a solution. Def. Ex. 5, ex.15. The Scialabbas did not receive this letter until after June 11, 1996. Pl. Ex. (xiv) at 166-67; Pl. Ex. (xv) at 101-04. On June 11, 1996, Goldberg sent a notice to the Scialabbas for numerous alleged disturbances over eight years. Pl. Ex. 4 at 1-3. The notice states the board determined the Scialabbas violated Sierra Blanca's governing rules and imposed a lien of $1,000 for "costs and expenses" that Sierra Blanca "has or will incur" as a result of the purported violations. *Id.* at 3-4. After receiving the June 11 notice, the Scialabbas contacted Hope Housing for assistance.

On June 26, 1996, Barbara and James Scialabba and Anne Houghtaling of Hope Housing met with Sierra Blanca, Schiro and Goldberg to discuss Michael's conduct and explore the possibility of a reasonable accommodation. Defendants contend the Scialabbas were given an

---

[2] Plaintiffs move to strike portions of defendants' Rule 56.1 statements that pertain to defendants' "advice of counsel" defense. Defendants did not respond. Plaintiffs' motion is granted to the extent that defendants rely on these paragraphs for an "advice of counsel" defense.

[3] Plaintiffs move to strike documents relied upon by defendants to show specific incidents of Michael's behavior. Because the court finds there is an issue of fact regarding the incidents Sierra Blanca relied on to take action against the Scialabbas, these documents are not presently relevant. Plaintiffs motion to strike is premature.

opportunity to discuss Sierra Blanca's concerns about Michael's conduct. Def. Facts at ¶ 83. The Scialabbas were not provided a notice of hearing, notice of violation, or notice to appear before Sierra Blanca filed the June 11 notice and recorded the lien. Pl. Ex. (xiii) at ¶ 5. Nor did Sierra Blanca provide the Scialabbas a hearing prior to issuing its determinations set forth in the June 11 notice. *Id.*; Pl. Ex. (vii) at 24,81-82;Pl. Ex. (viii) at 32. After the meeting, Goldberg sent a proposed accommodation to Houghtaling. On July 16, 1996, Houghtaling sent a counter-proposal for a reasonable accommodation. On July 30, 1996, Goldberg responded to Houghtaling's counter-proposal. Houghtaling informed Goldberg by letter on August 8, 1996 that she was reviewing the proposals with the Scialabbas, but not as their attorney. Pl. Ex. 15. On August 22, 1996, Goldberg refused to continue negotiating with Houghtaling because she did not represent the Scialabbas, and stated he would only communicate with them. Pl. Ex. 16. The next day, Goldberg issued a notice of condominium lien and 10-day notice of termination against the Scialabbas. Pl.Ex. 5; Pl. Ex.D at 1,4. This notice imposed another lien of $3,500 and stated the board was terminating the Scialabbas' ownership rights. *Id.* at 3-4. The Scialabbas were not provided notice of a hearing or a hearing before the August 23 notice issued. There is no evidence the board considered any specific incident involving Michael before issuing the notices and liens against the Scialabbas or provided Goldberg with information about specific incidents. Pl. Ex. (vii) at 93,95,102-07,118-28,132-33,136-38,140,144-47,149-56; *see* Pl. Ex. (xii) at 137-39,151,217-22. Indeed, Goldberg testified about collection of documents regarding Michael to prepare a January 1997 letter to the United States Department of Housing and Urban Development ("HUD") not to issue the notices in 1996. Pl. Ex. (ii) at 70-78. Goldberg does not recall when he collected police information concerning Michael's alleged conduct. *Id.* at 94-96.

-4-

Schiro believes complaints ABC Property received on Michael were provided to Goldberg. Def. Ex. 4 at 170-71. Former board president Robert Krueger testified no one to his knowledge specifically provided Goldberg with information on the Scialabbas. Pl. Ex. (vii) at 95. The allegations of improper conduct in the notice were allegedly based on complaints Sierra Blanca received from homeowners and lifeguards; there is an issue of fact concerning whether specific complaints were discussed by the board or provided to Goldberg before the notices were issued. *See* Pl. Ex. (vii) at 93,102-07,118-28,132-33,136-38,140,144-56; *see* Pl. Ex. (xii) at 137-39,151,217-22. On September 4, 1996, Sierra Blanca filed suit against the Scialabbas in Illinois state court to enforce the two notices. The state court granted the Scialabbas' motion to dismiss, finding defendants did not provide the Scialabbas adequate notice or a hearing as required by Sierra Blanca's governing documents. Plaintiffs filed discrimination complaints with HUD, but no determination was made. In August 2000, plaintiffs withdrew their HUD complaints and filed this suit.

## DISCUSSION

### I.    Summary judgment standard

Summary judgment is proper when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317,322 (1986). Once the movant meets its burden, the nonmovant must go beyond the pleadings and set forth specific facts showing a genuine issue for trial. Silk v. City of Chicago, 194 F.3d 788,798 (7th Cir. 1999). The court considers the entire record and draws all reasonable inferences in the nonmovant's favor. Bay v. Cassens Transp. Co., 212 F.3d 969,972 (7th Cir.2000). An issue of material fact exists when the evidence is sufficient to support

a reasonable jury verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## II.  Discriminatory restrictions on condominium facilities [Count I]

The Scialabbas allege that defendants violated § 3604(f) of the Fair Housing Act ("FHA")[4] by imposing discriminatory restrictions on the occupancy of their condominium and in providing services and facilities. These restrictions include the notices and lawsuit filed to enforce them. The Scialabbas contend defendants did not impose these restrictions on residents involved in misconduct similar to Michael's. The elements of a housing discrimination claim parallel those for a discrimination action under Title VII. Cavalieri-Conway v. L. Butterman & Assoc., 992 F. Supp. 995, 1002 (N.D.Ill.1998); see Kormoczy v. Secretary, U.S. Dep't of HUD, 53 F.3d 821, 823-24 (7th Cir.1995). The Scialabbas must first establish a *prima facie* case by a preponderance of evidence. To do this, they must show that Michael is a member of a protected class; that defendants issued the notices and filed suit to enforce them against the Scialabbas for Michael's alleged conduct; and that defendants were aware of residents outside the protected class who engaged in similar conduct but were not issued notices or sued. See Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1042 (7th Cir.1993); Gamble v. City of Escondido, 104 F.3d 300, 304-05 (9th Cir. 1996) (applying disparate treatment claim *prima facie* elements to FHA case). Defendants must articulate a legitimate, nondiscriminatory reason for their actions. Courtney v. Biosound, Inc., 42 F.3d 414, 418 (7th Cir.1994); Cavalieri-Conway, 992 F. Supp. at 1005. The Scialabbas must then show these reasons are pretextual, *i.e.* that a fact finder could

---

[4] Although the caption of Count I identifies § 3604(f) and § 3617, Count I only alleges a violation of § 3604(f). Count II separately alleges a violation of § 3617. To the extent the Scialabbas assert § 3617 is violated by violation of § 3604(f), the same reasoning applies.

reasonably infer defendants did not honestly believe the stated reasons for their actions. *Id.*; Anderson v. Baxter Healthcare Corp., 13 F.3d 1120,1124 (7th Cir. 1994). Defendants contend the Scialabbas cannot show that non-disabled residents who engaged in conduct similar to Michael's did not experience consequences comparable to the Scialabbas and that the Scialabbas cannot show pretext.

The Scialabbas argue defendants did not record liens against or sue residents who engaged in similar conduct. They point to Jodi Krueger who allegedly harassed Michael and his family, threatened to kill and swore at them. Pl. Ex. (xvii) at 28;Pl. Ex. (xv)at 41-42,84-85,141-43;Pl. Ex. (xiv) at 92-95,104,108-10; Pl. Ex. (i) at ¶15. Jodi denies these allegations but admits she swore once at James. Def.Supp. Ex. 5 at 44-46,65-68. Mary Stevens of ABC Property does not recall any complaints about Jodi's behavior. Def. Supp. Ex. 8 at 43. The Scialabbas reported to police on two occasions that Jodi threatened Michael and his family and called him names. Robert Krueger does not remember the Scialabbas ever complaining about Jodi or her friends harassing Michael. Def. Supp. Ex. 3 at 186. Jodi pled "no contest" and was convicted of one of these incidents. Neither Jodi or her family received a Sierra Blanca notice of violation as a result. Pl. Ex. (vii) at 202-03. But there is no evidence the Scialabbas gave information concerning Jodi's behavior to Sierra Blanca.

Robert Krueger allegedly called Michael a "retard," physically restrained and threatened to kill him. Pl. Ex. (xiv) at 100,107;Pl. Ex. (xv) at 49-51,115,182. Robert denies these allegations. Def.Supp. Ex.1 at ¶2. Robert was not issued a notice of violation for his alleged conduct. However, the Scialabbas do not assert they reported Robert's conduct to the Sierra

Blanca board nor do they argue the board had constructive knowledge of Robert's harassment of Michael.

Members of the Stokes family allegedly harassed Michael about his disabilities. Pl. Ex. (xvii) at 15-16. The Stokes were not issued a notice of violation. But no complaints about the Stokes were ever received by the Sierra Blanca board. Def.Supp.Ex.1 at ¶10.

The Scialabbas assert other residents cursed in common areas and were arrested and convicted, but none of these residents were issued a notice of violation or sued for this conduct. The Scialabbas claim Michael was criticized for attempting to bring alcohol into the swimming pool area, but other residents were not. Residents once rode bikes into the pool, violating pool regulations, but were not issued a notice. Michael was reprimanded for wearing shoes by the pool, while other residents were not. The Scialabbas fail to provide the identities of these individuals, and do not indicate whether or not they had a disability like Michael's. More importantly, there is no basis to reasonably infer defendants had knowledge of these incidents.

The Scialabbas testified they reported harassment of Michael to the property manager or board numerous times. Pl. Ex. (xiv) at 63-64, 72-74,102,116,120; Pl. Ex. (xv)at 45-46,52-54; Pl. Ex. (xii) at 203. Defendants deny these allegations. Def.Supp. Ex. 1 at ¶8, Ex. 4 at 203. Other than Barbara's belief she talked to Stevens and Schiro by phone once or twice, the Scialabbas cannot identify a specific time or person they spoke to about Michael's harassment. Pl. Ex. (xiv) at 116. She does not recall "[d]ates or times or who [she] spoke to." *Id.* at 102-03. Indeed, when Barbara called, she often was asked to leave a message or call back. *Id.* at 64. Due to her work schedule, she "was unable to do that." *Id.* Barbara did not testify she actually left a message regarding the harassment Michael suffered or by whom. Barbara testified that when she attended

a meeting, she was "never allowed to voice [her] complaint because it was all an attack" on her. *Id.* She did not testify that she in fact reported Michael's harassment. The only incident she might have reported was a "pool incident" when young boys called Michael names. The alleged harassers and specific conduct were not identified and no written complaint was submitted. Schiro did not receive any calls from the Scialabbas about Michael's harassment nor did he recall seeing the Scialabbas at board meetings. Def.Supp. Ex. 4 at 203. Robert Krueger did not receive complaints that Michael was harassed. Def.Supp. Ex. 1 at ¶8.

Robert Krueger purportedly stated at a board meeting that he wished to get the Scialabbas out of Sierra Blanca. Pl. Ex. (i) at ¶¶11-12. When asked why, he responded that Michael was mentally imbalanced. *Id.* Robert denies these statements. Def.Supp. Ex. 1 at ¶¶3,5. Plaintiffs fail to identify any of the following: the date of this meeting; the context of Robert's statement; the individual who questioned Robert's reason; and whether the purported statement had any influence on the board's actions. This evidence lacks foundation.

Liens were imposed against other residents for nonpayment of association dues and a balcony problem. Pl. Ex. (vii) at 186;Pl. Ex. (viii) at 48;Def. Supp. Ex. 4 at 249-50,262. Further, Sierra Blanca filed lawsuits against other owners for violating the declaration, rules and regulations, by not paying dues and operation of a baby-sitting business. Pl. Ex. (vii) at 187; Def.Supp. Ex. 4 at 251-53.

Sierra Blanca did not provide the Scialabbas notices of hearing or a hearing on the alleged violations prior to issuing the June 11, 1996 notice and lien, even though other residents were generally afforded hearings. Pl. Ex. (vii) at 20,60; Pl. Ex. (xii) at 114-15; Pl.Ex. (viii) at 24, 27.

A hearing was the only mechanism Sierra Blanca provided accused owners to discuss allegations with the board. Pl.Ex.(vii)at 56-7.

The Scialabbas conclude they have submitted sufficient evidence to survive summary judgment. But viewed in a light most favorable to the Scialabbas, they have not established by a preponderance of the evidence that non-disabled residents engaged in conduct similar to Michael's and that their misconduct was reported to defendants. Without that information, Sierra Blanca had no basis to issue a notice or bring a lawsuit. Indeed, the Scialabbas present no evidence Sierra Blanca considered other residents' misconduct and decided not to issue a notice. As a result, the Scialabbas fail to establish a *prima facie* case of discrimination and summary judgment must be granted on Count I.

## III. Coercion, intimidation, threats and interference [Count II]

The Scialabbas argue the record demonstrates defendants coerced, intimidated, threatened and interfered with the enjoyment of their home in violation of § 3617. The Scialabbas assert Sierra Blanca residents continually harassed Michael because of his disability by taunting him at the swimming pool, by calling him "Retard," "Crazy Mike," and other derogatory names and by mimicking Michael's gait. Pl. Facts at ¶ 60. None of these residents are identified nor are they defendants in this lawsuit. James does not identify those who harassed Michael. Pl. Ex. (xv)at 43-44. The Scialabbas assert board president Robert Krueger harassed them. Pl. Ex. (xv)at 49-50,51,115,182; Pl. Ex. (xiv) at 100,107. Robert denies this. Def.Supp. Ex.1 at ¶2. The Scialabbas do not argue Robert acted on behalf of the board or that the board had knowledge of Robert's purported behavior. Barbara Scialabba claims she reported incidents of harassment to defendants at least twenty times. Pl. Facts at ¶¶71-72. However, Barbara did not give defendants notice of

this alleged harassment. Barbara explains that she was dismissed or told her words did not count when she reported harassment. Pl. Facts at ¶73. Because Barbara has not identified to whom she spoke or when, defendants' purported response lacks foundation. The Scialabbas assert Sierra Blanca admitted it knew residents were harassing Michael. Pl. Facts at ¶75. This statement is based on the recollection of a Hope Housing representative. Pl. Ex. (iv) at 57. She did not identify who purportedly made this statement so it cannot be construed an admission by defendants. Robert Krueger denies the assertion. Def.Supp. Ex.1 at ¶7. Goldberg purportedly stated Michael should be institutionalized, and defendants requested that Michael undergo psychiatric treatment. Pl. Ex. (xv)at 115-16; Pl. Ex. (xiv) at 144. Goldberg denies he said Michael should be institutionalized. Def.Supp. Ex.2 at 75. Construing this conflict in the Scialabbas' favor, there is no evidence Goldberg's suggestion during reasonable accommodation negotiations coerced, intimidated, threatened or interfered with the Scialabbas' enjoyment of their home. Defendants did not consult a medical doctor or psychiatrist before proposing that Michael and James seek counseling. Pl. Facts at ¶ 80. Goldberg recommended treatment because Michael's doctor made that recommendation. Def. Ex. 5 at 141-42, at ex.15,E. The Scialabbas argue that these facts demonstrate continuous harassment and intimidation by Sierra Blanca and ABC Property and are actionable under § 3617. United States v. Wagner, 940 F. Supp. 972,979 (N.D. Tex. 1996)(§ 3617 is broadly applied to all practices that interfere with the exercise of federal fair housing rights). Wagner does not support the proposition that the purported conduct of Sierra Blanca residents and defendants' inaction violate § 3617. The Scialabbas contend the notices and liens, the refusal to provide them a hearing, and Sierra Blanca's unsuccessful suit to force the sale of their unit also show harassment, but present no

-11-

evidence these actions were discriminatory. *Id.* Summary judgment is therefore appropriate on Count II.

## IV.  Fostering and ratification of a hostile environment [Count III]

For a hostile environment claim to be actionable under Title VII, conduct must be severe or pervasive enough to create an objectively hostile work environment. <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993). Applied to the housing context, a claim is actionable "when the offensive behavior unreasonably interferes with use and enjoyment of the premises." <u>DiCenso v. Cisneros</u>, 96 F.3d 1004,1008-09 (7th Cir.1996); <u>Honce</u>, 1 F.3d at 1090. Whether an environment is hostile or abusive can be determined only by considering all the circumstances. Factors may include the frequency of the discriminatory conduct; its severity; whether conduct is physically threatening or humiliating, or a mere offensive utterance; and whether the conduct unreasonably interferes with an employee's work performance. <u>DiCenso</u>, 96 F.3d at 1008-09. If defendants have no knowledge of the behavior, plaintiffs may not pursue their hostile environment claim. *See* <u>McKenzie v. Illinois Dep't of Transp.</u>, 92 F.3d. 473, 480 (7th Cir. 1996); <u>Tutman v. WBBM-TV/CBS Inc.</u>, 54 F. Supp.2d 817, 824 (N.D. Ill. 1999). The Scialabbas have not produced evidence that defendants were aware of the harassment Michael purportedly suffered. Accordingly, Count III cannot survive summary judgment.

## V.  Failure to provide reasonable accommodation [Count IV]

Defendants argue the Scialabbas fail to articulate the accommodation they wanted for Michael, but that it appears they want Michael to be allowed to continue his improper behavior without any adverse action by Sierra Blanca. This, defendants conclude, is an unreasonable accommodation. <u>Marthon v. Maple Grove Condo. Ass'n</u>, 101 F. Supp. 1041,1052 (N.D.Ill.2000).

-12-

Further, defendants argue an accommodation was not required because Michael was a direct

threat to the safety of others. <u>Talley v. Lane</u>, 13 F.3d 1031,1034 (7th Cir.1994);42

U.S.C.§3604(f)(9). Defendants argue Michael's own doctor thought he could be physically

violent.

Defendants must show they attempted to reasonably accommodate Michael's disabilities

and that he was a direct threat despite these accommodations before the June 11 notice was

issued. <u>Roe v. Housing Auth. of City of Boulder</u>, 909 F.Supp. 814, 822 (D. Colo.1995). If

accommodation could eliminate the risk posed by a resident considered a threat, defendants must

provide that accommodation. <u>Roe v. Sugar River Mills Assoc.</u>, 820 F.Supp. 636,640

(D.N.H.1993). Thus, defendants had a duty to make good faith efforts to accommodate Michael

before they filed the liens and the state lawsuit. Indeed, the Scialabbas argue defendants

previously reached an agreement with them in 1994 to limit Michael's pool access. Pl. Ex. (xv)at

152-53; Pl. Ex. (xiv) at 156-57;Pl. Ex. (xii) at 149-50,176,212,214. The Scialabbas argue

defendants knew reasonable steps could address concerns about Michael's behavior.

Defendants argue they offered an accommodation to the Scialabbas at the June 26

meeting. But this occurred *after* the June 11 notice and lien were issued. Hope Housing sent a

counter-proposal to Sierra Blanca's June 26 proposal. Sierra Blanca contends it was prepared to

adopt a fair housing policy that educated its members, allowed Michael to be at the pool with an

adult, and waived attorneys fees. This is substantially what the Scialabbas allegedly proposed.

Despite this, defendants argue plaintiffs did not respond to the suggestions and filed complaints

with HUD. This argument omits that after receiving acceptance of most of the Scialabbas'

proposal, Houghtaling informed Goldberg that she was reviewing the proposals with the

-13-

Scialabbas, but not as their attorney. Pl. Ex. 15. In response, Goldberg terminated their negotiations and stated he would only communicate with the Scialabbas. Pl. Ex. 16. Instead of negotiating with them, the next day Goldberg issued the notice of lien and termination. Pl. Ex. 5. Goldberg's termination of negotiations with Hope Housing and failure to continue negotiations with the Scialabbas on a proposal Sierra Blanca contends substantially comported with the Scialabbas' request create a material issue of fact concerning responsibility for the breakdown of the accommodation process. *See* Beck v. University of Wis. Bd. of Regents, 75 F.3d 1130,1135-36 (7th Cir.1996).

Defendants also argue that ABC Property does not have the authority to modify Sierra Blanca's rules and regulations and so could not effectuate a reasonable accommodation. *See* Marthon, 101 F. Supp. at 153-54. The Scialabbas respond that ABC Property participated in reaching the 1994 accommodation for Michael. Defendants argue the Scialabbas' agreement was with the board and not ABC Property. Def.Facts at ¶30. But defendants' citation to the record does not establish the agreement was only with the board. A genuine issue of fact regarding whether ABC Property could aid in an accommodation remains. Summary judgment must be denied on Count IV.

**VI.    Breach of fiduciary duty and negligent breach of fiduciary duty for violation of declaration and bylaws [Counts V & VII]**

Plaintiffs and defendants move for summary judgment on these claims. The Scialabbas argue Sierra Blanca breached its fiduciary duty to them by issuing the notices of violation without abiding by its governing documents. Sierra Blanca's board has a fiduciary duty to the owners. Carney v. Donley, 633 N.E.2d 1015, 1022 (Ill. App. Ct. 1994). If the board uses its

business judgment in interpreting its declaration, there is no breach. *Id.* The ultimate question is the reasonableness of the board's actions. *Id.*; LaSalle Nat'l Trust, N.A. v. Board of Dir. of the 1100 Lake Shore Drive Condo., 677 N.E.2d 1378, 1382 (Ill. App. Ct. 1997). The scope of the fiduciary duty can be limited by the declaration. LaSalle Nat'l Trust, 677 N.E.2d at 1382. Defendants assert they relied on Goldberg to interpret and apply Sierra Blanca's governing documents and thus acted reasonably. Carney, 633 N.E.2d at 1022. Carney found that a board does not breach its fiduciary duty by acting contrary to its declaration if it sought and relied upon legal advice to interpret the declaration. *Id.* at 1021-22.

Plaintiffs contend Sierra Blanca cannot rely on Goldberg's advice because defendants precluded the Scialabbas from discovering communications between them by invoking the attorney-client privilege. Dorr-Oliver Inc. v. Fluid-Quip, Inc., 834 F. Supp. 1008,1011-12 (N.D.Ill.1993). Disclosure of communications between an attorney and his client is required once the client injects a good faith reliance defense into the proceedings. *Id.* Defendants have failed to do this. Each time Goldberg, Robert Krueger or Schiro were questioned about whether the board was required to provide the Scialabbas a hearing, followed proper procedure with the Scialabbas, or provided specific incidents of Michael's alleged behavior to Goldberg, the attorney-client privilege was invoked. Pl. Ex. (vii) at 26-27,29-30,38,93-96,105; Pl. Ex. (xii) at 124-25,175-76,227-28; Pl. Ex (ii) at 33-35,43-44,48,51,78,110,164-65. Further, former board members refused to answer questions about the nature and substance of communications between defendants and Goldberg regarding action taken against the Scialabbas. Pl. Advice of Counsel Mot. to Strike Ex. 7 at 39-40;Pl. Ex. (viii) at 42. Whether defendants "acted in good faith depends on what legal advice they received and whether they followed that legal advice." Dorr-

Oliver, 834 F. Supp. at 1012. Defendants argue they provided Goldberg's opinions on whether a hearing was required and whether the notice of violation was proper. Def.Facts at ¶¶64-79,98-101. But Sierra Blanca retained Goldberg for the Scialabba matter because it "didn't like the advice that [it] had gotten" from its previous attorney. Pl. Ex. (vii) at 38. Defendants do not disclose if Goldberg's opinion that action against the Scialabbas was proper under the governing documents constitutes all his advice. Thus, defendants cannot rely on Goldberg's advice as a shield or sword in this action.

On June 11, Sierra Blanca issued the notice of violation and lien without providing the Scialabbas a hearing. Sierra Blanca's rules and regulations state that if someone is believed to have violated the governing documents, a signed complaint must be submitted and the accused will be given written notice informing him of a time and place where the board will conduct a hearing on the complaint. Pl. Ex.1,§ XII(A)-(B) at 14-15. The board president testified that for every alleged violation the "declaration and rules and regulations required that the board provide an opportunity for a hearing for the particular unit holder before arriving at a determination." Pl. Ex. L at 19-20,26. On August 23, 1996, Sierra Blanca issued a notice of lien and termination against the Scialabbas. On September 4, 1996, Sierra Blanca filed suit in Illinois state court to enforce the notices and requested the court either to enjoin the Scialabbas from violating its declaration or to permit a judicial sale of their condominium. Pl. Ex. E. The Scialabbas filed a motion to dismiss arguing in part that the association failed to follow its declaration and rules and regulations. In response, Sierra Blanca argued it satisfied all procedural requirements. Pl. Ex. G. After considering the briefs and oral arguments, the state court granted the Scialabbas' motion to dismiss finding:

> [Sierra Blanca] failed to comply . . . in that It's Notice to [the Scialabbas] failed to allege any conduct that occurred within the thirty day period.

> Plaintiff failed to comply with the Rules and Regulations . . . requiring the Board to give a hearing for alleged violations of any of the provisions of the By-Laws, Declarations or Rules and Regulations.

Pl. Ex. J. Furthermore, the state court order incorporated by reference the court's oral pronouncement made during the January 1997 hearing:

> You must be bound by your own rules . . . [E]verybody that's a unit owner is bound by rules that guarantee them a right to a hearing if there's an assertion that any of the provisions of the declaration, bylaws or rules and regulations require a hearing and a written complaint. . . [I]t's been dismissed because you haven't complied with the rules and regulations of the Board to give a hearing . . . and that is obviously fatal.

Pl. Ex. I. Based on this ruling, the Scialabbas contend Sierra Blanca is estopped from litigating that it did not violate its governing documents by failing to provide a hearing prior to issuing the notices, and by providing them defective notice. *See* Duncan v. City of Chicago, No. 91 C 7973, 1992 WL 162248, at *3-4 (N.D. Ill. July 5, 1992). The Scialabbas conclude Sierra Blanca breached its fiduciary duties to them by violating the governing documents. *See* Board of Managers of Weathersfield Condo Ass'n v. Schaumburg Ltd. P'ship, 717 N.E.2d 429, 436 (Ill. App. Ct. 1999); Wolinsky v. Kadison, 449 N.E.2d 151, 157 (Ill. App. Ct. 1983).

Federal courts must give state court judgments the same "full faith and credit" as they have by law in the courts of the state. Charles Koen & Assoc. v. City of Chicago, 909 F.2d 992, 996-97 (7th Cir. 1990). Thus, this court must give the same preclusive effect to the state court order as would be given by Illinois state courts. *Id.*; Marreses v. American Acad. of Orthopedic Surgeons, 470 U.S. 373, 386 (1985); Duncan, 1992 WL 162248, at *3. Illinois precludes

relitigation of an issue where the party against whom estoppel is asserted was a party to the prior litigation; the issues were actually litigated and decided on the merits in the prior suit; resolution of the issues were necessary to the court's judgment; and the issues are identical to those in the subsequent suit. Duncan, 1992 WL 162248, at *3; American Fam. Mut. Ins. Co. v. Savickas, 739 N.E.2d 445, 451 (Ill. 2000). The party raising estoppel has the burden of showing with clarity and certainty what was determined by a prior judgment. Sarno v.Akkeron, 684 N.E.2d 964,968 (Ill.App.Ct. 1997). Courts also consider whether preclusion would be unfair to the party sought to be estopped. American Fam. Mut. Ins. Co., 739 N.E.2d at 451.

Each element required for collateral estoppel is met. Sierra Blanca was a party to the state court litigation; the issue of whether Sierra Blanca violated its declaration and rules and regulations when it issued the notices and levied liens against the Scialabbas without a hearing was fully briefed and argued by the parties; these arguments were considered by the state court that made an oral pronouncement incorporated into its written order finding Sierra Blanca did not comply with its rules and regulations; the hearing transcript and order make clear that Sierra Blanca's violations of the declaration and rules and regulations were necessary to the dismissal; and whether Sierra Blanca violated its declaration and rules and regulations is the issue presently before this court because the Scialabbas must show this to establish Sierra Blanca violated the Condo Act and breached its fiduciary duty to them.

Despite this, Sierra Blanca argues collateral estoppel does not apply because the issue in this case is whether it breached its fiduciary duty, and this was not at issue in the prior case. Sierra Blanca argues that as long as it completed the procedural tasks the court found were required, *i.e.* a hearing and proper notice, it could bring another action on the same alleged

violations. This is irrelevant. Whether the board provides the Scialabbas with a hearing and proper notice on the alleged violations in the future does not alter that it acted in derogation of its governing documents in the past. Sierra Blanca also asserts there was no evidentiary hearing to adjudicate factual issues, but affidavits were submitted on the issue, oral arguments held and the record demonstrates Sierra Blanca did not provide the Scialabbas with a hearing or proper notice. Pl. Ex.G,I. Sierra Blanca had ample opportunity to address whether it complied with its governing documents. Sarno is thus distinguishable. 684 N.E.2d at 969. Sierra Blanca elected not to seek reconsideration, appeal the order or amend its complaint. The state court order determined the "ultimate rights and liabilities of the parties." A.W. Wendell & Sons, Inc. v. Qazi, 626 N.E.2d 280, 290 (Ill. App. Ct. 1993). Sierra Blanca is estopped from denying it violated its governing documents by issuing a defective notice and by failing to provide the Scialabbas a hearing. But this is not determinative of whether it breached its duty to the Scialabbas.

The issue is whether Sierra Blanca reasonably effectuated its duties. The Scialabbas argue that Sierra Blanca failed to do this. A board's exercise of its fiduciary duty "requires strict compliance with the condominium declaration and bylaws." Wolinsky, 449 N.E.2d at 157; Board of Managers of Vill. Square Condo. Ass'n v. Amalgamated Trust & Sav. Bank, 494 N.E.2d 1199,1204 (Ill. App. Ct. 1986). But Carney held a board's failure to strictly comply with the declaration does not give rise to a breach where the board reasonably exercised its business judgment. The Scialabbas contend that in contrast to the defendants in Carney, Sierra Blanca cannot point to any admissible evidence to establish its actions were reasonable.

Sierra Blanca contends its actions were reasonable because the governing documents reserve to it the right to pursue legal remedies to compel enforcement of any violation of the rules, regulations, bylaws and declaration. Pl. Ex.1,§XII(E) at 15. But in the past the board provided owners an opportunity for a hearing. Pl. Ex. (vii) at 19-24,26. The board presents no evidence why in this instance it did not follow past practice. Sierra Blanca argues it tried to address Michael's conduct and held a meeting with plaintiffs to attempt to resolve the issues. *Id.* Indeed, Sierra Blanca argues it complied with its fiduciary duties by addressing a problem affecting all residents, not just one. Wolinsky, 449 N.E.2d at 157. The Scialabbas respond there is no evidence the board considered specific incidents involving Michael before issuing the notices and liens against them. Pl. Ex. (i) at ¶¶7-10; Pl. Ex. (vii) at 102-07,118-28,132-33,136,140, 144-47,149-56;*see* Pl. Ex. (xii) at 137,151,217-22. Moreover, the board did not consult any medical professionals as part of its determination that Michael constituted a threat.[5] Pl. Ex. (vii) at 213. Krueger does not know if ABC Property consulted medical professionals either. *Id.* at 213-14. Finally, progress made after the June 26 meeting in finding a resolution was abruptly terminated by Sierra Blanca's attorney. Thus, Sierra Blanca did not act reasonably by issuing the notices and liens without providing the Scialabbas a hearing.

Sierra Blanca asserts it cannot be liable for negligence because the declaration limits the liability of board members, providing they "shall not be personally liable . . . for any mistake of judgment or for any acts or omissions made in good faith as such Board members or acting as the Board." Def. Ex. 2,Art.V, § 8; Kelley v. Astor Investors, Inc., 478 N.E.2d 1346,1348 (Ill. 1985);

---

[5] Defendants did not properly disclose Dr. Kaplan pursuant to Rule 26(a)(2). They cannot rely on his opinions. *See* Order dated June 8, 2001.

*see* <u>Swieton v. City of Chicago</u>, 472 N.E.2d 503, 505 (Ill. App. Ct. 1984). The Scialabbas

respond that by its terms the clause does not apply to claims against Sierra Blanca as a whole.

This clause differs from the one in <u>Kelley</u> that stated "[n]either the members of the Board nor the

officers shall be liable . . . for any mistake of judgement" or acts except those that constitute

willful misconduct in performance of a duty. 478 N.E.2d at 1348. The Scialabbas sue Sierra

Blanca for violating its governing documents and not board members in their personal capacity.

Thus, the limitation clause does not apply.

Citing <u>Robinson v. LaCasa Grande Condo Ass'n</u>, 562 N.E.2d 678, 683 (Ill. App. Ct.

1990), Sierra Blanca contends a claim for negligent breach of fiduciary duty is not cognizable.

<u>Robinson</u> held that board members cannot be liable for negligent performance of their duties. *Id.*

Because the Condo Act makes board members fiduciaries, and breach of fiduciary duty in Illinois

is not a tort, board members cannot be liable in tort for breaches of their fiduciary duties to

condominium owners. *Id.* The Scialabbas argue a claim of negligence is recognized. <u>Wilstein v.</u>

<u>San Tropai Condo. Master Ass'n</u>, No. 98 C 6211, 1999 WL 262145, at *13-14 (N.D.Ill. Apr.

22,1999). Without explanation, Sierra Blanca argues <u>Robinson</u> and not <u>Wilstein</u> applies in this

case. <u>Wilstein</u> found a condominium association could be sued in negligence for breach of any

duty in § 18.4 of the Condo Act. *Id.* Among the duties in §18.4 is levying fines for violation of

governing documents. 735 ILCS 605/18.4(l). Because the notices levied liens on the Scialabbas

for enforcement of alleged violations of Sierra Blanca's governing documents, this case is within

the purview of <u>Wilstein</u>. Furthermore, <u>Wilstein</u> distinguished <u>Robinson</u> on the basis that it

addressed negligence liability of individual board members, not the association itself. 1999 WL

262145, at *14. Sierra Blanca fails to establish that it cannot be liable for negligence and that it

-21-

was not negligent by issuing the notices and liens in derogation of its governing documents. Summary judgment is inappropriate on Counts V and VII.

## VII.    Breach of fiduciary duty and negligent breach of fiduciary duty for violation of federal fair housing laws [Counts VI & VIII]

Defendants and plaintiffs incorporate by reference their arguments regarding Counts I through V, and VII. Sierra Blanca concludes that no breach of fiduciary duty occurred because it did not violate the FHA. Plaintiffs contend the opposite. Because this court finds a genuine issue of material fact concerning whether defendants complied with the FHA's reasonable accommodation requirement, there exists an issue of material fact concerning whether Sierra Blanca breached or negligently breached its fiduciary duties by not providing the Scialabbas a reasonable accommodation. Summary judgment must be denied.

## CONCLUSION

Defendants' motion for summary judgment is granted as to Counts I, II and III and denied as to Counts IV, V, VI, VII and VIII. Plaintiffs' partial motion for summary judgment on Counts V and VII is granted.

July 11, 2001

ENTER:

Suzanne B. Conlon
United States District Judge